UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA BELYEW,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LARRY LORMAN, et al.,<br><br>　　　　Defendants. | No. 2:17-cv-0723 MCE CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. §1983. This action is proceeding on a claim for damages based upon excessive force. The claim arises under the Fourth Amendment and is against Larry Lorman, a Colusa police officer. ECF Nos. 25, 27 & 35. Defendant Lorman's motion for summary judgment is before the court.

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

/////

purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## II. Plaintiff's Allegations

In her March 2, 2018 amended complaint, plaintiff alleges as follows under the penalty of perjury:

> On February 2, 2016, I was being arrested at my motel room by Officer Lorman. During his "search" he grabbed my buttocks in an aggressive manner while I was screaming at him to stop. He choked me on the way to the car. He left fingerprint bruises on my buttocks. . .

Plaintiff also alleges that during the arrest she suffered from bruises as a result of handcuffs which were too tight and scars on her ankles from being "hog tied." The court notes that plaintiff does not challenge the fact that she was arrested or the initial application of handcuffs.

## III. Applicable Fourth Amendment Standards

Claims of excessive force during an arrest are evaluated under the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). "The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them." Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007). In determining the reasonableness of force used, courts consider, among other things, the severity of the crime at issue, whether the suspect posed an immediate threat of harm, whether the suspect was actively resisting arrest or attempting to evade arrest by flight, the availability of alternative

3

methods of detention and the plaintiff's mental and emotional state.  Brooks v. Clark County, 828 F.3d 910, 920 (9th Cir. 2016).

IV. Defendant's Arguments and Analysis

    A. Force Used Was Reasonable

Defendant Lorman asserts there is no genuine issue of material fact as to whether excessive force was used against plaintiff in violation of the Fourth Amendment when defendant arrested plaintiff on February 2, 2016.  Defendant provides an affidavit with his motion.  Most notably, defendant asserts:

    1. As plaintiff was put in handcuffs, defendant removed a fanny pack, belt and "sheath" for a knife from the back of plaintiff's waistline.  As this occurred, plaintiff yelled a number of times "don't touch my ass!"  Defendant does not deny he touched plaintiff's buttocks, but asserts that the touching was not sexual in nature.  After the defendant applied the handcuffs plaintiff repeatedly accused defendant of having touched her buttocks.

    2. While he was placing plaintiff in the back of his patrol car, plaintiff began to yell at defendant not to touch her neck.  Defendant does not recall touching her neck.  Regardless, he did not choke plaintiff.

Defendant Lorman provides a video of his interactions with plaintiff and her arrest taken from defendant's body-cam.  Unfortunately, the video is of minimal assistance in resolving whether defendant grabbed plaintiff's buttocks and causing plaintiff injury as plaintiff alleges. While the video does not contradict any of defendant's assertions as to his removal of plaintiff's fanny pack, the video is not conclusive as to whether excessive force was used due to poor camera angle and lack of light.  ECF No. 54, file 01801916 at 20:00-20:30.  Construing all of the evidence before the court in favor of plaintiff as the court must, including plaintiff's allegations that she suffered from bruises as a result of defendant grabbing her buttocks, there is at least a genuine issue of material fact as to whether excessive force was used.

As for plaintiff's allegations concerning choking, it does appear from the video that defendant at least briefly placed his hands on plaintiff's neck as part of an attempt to put plaintiff into his police car as plaintiff resisted, threatened, and berated defendant.  ECF No. 54, file

4

01801924 at 0:00-1:10. But, considering plaintiff's clear and constant screaming "don't put your hands on my neck" the court concludes that it is impossible that she was being choked to a degree which would amount to excessive force under the Fourth Amendment. Further, as reflected in the video, plaintiff never complains about being choked; rather she takes issue with the defendant placing his hands on her neck.

Defendant does not address any claim by plaintiff concerning the use of handcuffs independent of a "hobble" device, which binds handcuffs to feet raising legs from the ground while the person restrained lies on her stomach, and plaintiff does not argue that such a claim should survive defendant's motion for summary judgment. Again, the only allegation by plaintiff in her complaint is that she suffered bruises as a result of the use of handcuffs. In the video plaintiff did not complain about the handcuffs being too tight when they were applied or at any time prior to the "hobble" device being attached to the handcuffs which occurred about 30 minutes later. Her lack of complaint on this point is particularly telling in that she repeatedly threatened and berated defendant, and continually complained about the touching of her buttocks and neck, a flashlight being shined in her face, and that she was cold. Thus, the court concludes that any claim plaintiff might have regarding the tightness of handcuffs independent of the use of the "hobble" device lacks sufficient factual support entitling defendant to summary judgment.

As for the initial application of the "hobble" device, the video establishes that this was reasonable under the circumstances. Plaintiff repeatedly attempted to cause damage by kicking one of the back doors of defendant's police car while she was in the back seat and handcuffed and would not stop despite defendant's orders. ECF No. 54, file 01801924 at 8:00-19:30, 22:30-end; 01801932x9DF46 at 0:00-2:25. Further, at the time she was "hobbled" plaintiff did not voice any complaint regarding the binding being too tight and instead mostly continued her barrage of threats and name calling directed at defendant and the officers assisting.

Nevertheless, plaintiff alleges she suffered injuries as a result of the "hobble" and defendant does not point to evidence indicating this was not due to prolonged use of the "hobble." The video provided by defendant only depicts application of the "hobble," not the duration of time plaintiff was restrained. Again, as the court understands, the "hobble" caused plaintiff's

hands to be connected to her feet while her feet were pointing upward. Forcing plaintiff to remain in this position for a prolonged period of time and at a time when use of the "hobble" was no longer reasonable, could produce injury even if the handcuffs and loop around plaintiff's feet were not tied too tight. Accordingly, while the initial application of the "hobble" was reasonable, the length of time it was used may not have been.

      B. Qualified Immunity

Defendant also asserts he is entitled to summary judgment under the "qualified immunity" doctrine. "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001).

The court addressed whether plaintiff's claims survive the first part of the qualified immunity analysis above. Plaintiff's claim concerning injuries to her buttocks is supported by sufficient evidence to survive defendant's motion for summary judgment and defendant has not met his burden to show there is no genuine issue of material fact as to whether the duration of time plaintiff was forced to lay on her stomach with her feet and hands tied together was reasonable. As to those claims, plaintiff's right to not be subjected to excessive force under the Fourth Amendment was clearly established at the time she was arrested by defendant and the facts alleged by plaintiff are not so unique that defendant was not on notice of violations of the Fourth Amendment if defendant acted as plaintiff alleges he did.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 53) be denied as to plaintiff's Fourth Amendment excessive force claims concerning her allegation that defendant grabbed her

/////

6

buttocks causing bruises and the duration of time plaintiff was forced to lie on her stomach with her feet and hands tied together; and

    2. Defendant's motion for summary judgment be granted in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 10, 2020

*/s/ Carolyn K. Delaney*
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

1
bely0723.msj